UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 3:18-CR-00045 JD |
| | ) | |
| MICHAEL THOMAS | ) | |

**OPINION AND ORDER**

Pending before the Court is the Defendant Michael Thomas' Motion to Strike Surplusage [DE 20] and Motion for a Bill of Particulars [DE 22]. The government filed a response on June 8, 2018 [DE 26]. The Defendant filed his reply on June 15, 2018 [DE 27]. In essence, the Defendant is asserting that the indictment does not contain enough information of one kind but contains too much information of another kind.

The indictment [DE 1] charges Mr. Thomas in four counts. Pursuant to 18 U.S.C. § 2 and 1341, each count alleges "a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the [foregoing allegations]…knowingly caused to be sent, delivered, and moved by the United States Postal Service" specific checks from an Insurance Company to Mr. Thomas. Each individual check constitutes a separate count in the indictment.

The Defendant's motions are now ripe for consideration. For the reasons stated below, the Defendant's Motion to Strike Surplusage is granted in part and denied in part, and Defendant's Motion for a Bill of Particulars is denied.

# MOTION TO STRIKE SURPLUSAGE

**BACKGROUND**

On May 23, 2018, the Defendant filed his motion to strike surplusage in the indictment [DE20], in which he argues that the government has included irrelevant and potentially prejudicial information in the indictment, which needs to be stricken. In his motion, Mr. Thomas asserts the following sections should be stricken because they are irrelevant, immaterial, and/or prejudicial:

> 2. From 2004 through 2013, seven fires occurred at residences in which Thomas and/or his wife had an ownership interest. Thomas and/or his wife obtained insurance policies shortly before each fire, submitted insurance claims promptly after each fire, and received payments totaling $616,749.58 from the insurance companies. These residences were located in or near a mobile home park in North Judson, Indiana.
>
> 3. On August 31, 2004, Michael Thomas obtained an insurance policy from Insurance Company A on a mobile home he owned at 2691 Julia Drive, North Judson, Indiana. On September 17, 2004, a fire occurred at this mobile home. Thomas submitted an insurance claim three days later, and Insurance Company A mailed Thomas checks totaling $75,000.
>
> 4. On November 4, 2010, Thomas's wife obtained an insurance policy from Insurance Company A on a mobile home and garage owned by Thomas and others at 5081 S 275 W, North Judson, Indiana. On November 14, 2010, one fire occurred at this mobile home and another fire occurred in the garage. An associate of Thomas set these fires at Thomas's direction. Thomas's wife submitted an insurance claim two days later (as well as a later claim), and Insurance Company A mailed Thomas and others checks totaling $25,961.15. Thomas deposited these checks into the joint bank account he held with his wife. Fire officials determined that these fires were arsons.
>
> 5. On November 4, 2010, Thomas's wife obtained an insurance policy from Insurance Company A on a mobile home owned by Thomas's wife and mother in law at 5326 SA Street, North Judson, Indiana. On November 14, 2010, a fire occurred at this mobile home. Thomas's wife submitted an insurance claim two days later (as well as later claims), and Insurance Company A mailed Thomas's wife and mother in law checks totaling $29,561.12. Thomas's wife deposited these checks into the joint bank account she held with Thomas. Fire officials determined that this fire was an arson.
>
> 6. In addition to these three fires on November 14, 2010, two other fires occurred at two residences in the mobile home park on the same date. These fires occurred at 5370 Holiday Street and 2729 Air Stream Court, both in North Judson, Indiana.

Thomas did not have an ownership interest in either of these residences, and an associate of Thomas set the fire at 2729 Air Stream Court to deflect suspicion from Thomas. Fire officials determined that these fires were arsons.

7. On December 11, 2012, Thomas and his wife obtained an insurance policy from Insurance Company A on a mobile home they owned at 5101 S 275 W, North Judson, Indiana. Thomas was attempting to sell this mobile home, and the listing price was reduced from $24,000 to $19,000 in October 2012. On January 9, 2013, a fire occurred at this mobile home. Thomas submitted an insurance claim the next day, and Insurance Company A mailed Thomas and his wife a check for $60,000. Thomas deposited this check into the joint bank account he held with his wife.

8. After the fire at 5101 S 275 W, Thomas requested that the insurance company provide reimbursement for a washer and dryer that the fire had supposedly destroyed. In fact, no washer and dryer were in the mobile home at the time of the fire.

…

10. A summary of this information follows:

| WHERE | HOME OWNER | POLICY OWNER | DATK INSURED | FIRE DATE | CLAIM DATE | PAYMENT DATE | PAYMENT AMOUNT |
|---|---|---|---|---|---|---|---|
| 2691 Julia Dr. | Thomas | Thomas | 8/31/04 | 9/17/04 | 9/20/04 | 10/21/04; 1/25/05 | $75,000 |
| 5081 S 275W | Thomas and others | Thomas's wife | 11/4/10 | 11/14/10 | 11/16/10; 7/7/11 | 12/10/10; 7/7/11 | $25,961.15 |
| 5326 S A Street | Thomas's wife and mother in law | Thomas's wife | 11/4/10 | 11/14/10 | 11/16/10; 1/14/11; 10/26/11 | 12/15/10; 2/11/11; 11/1/11 | $29,561.12 |
| 5101 S 275W | Thomas and wife | Thomas and wife | 12/11/12 | 1/9/13 | 1/10/13 | 2/7/13 | $60,000 |
| 2691 Julia Dr. | Thomas and wife | Thomas | 4/6/13 | 4/17/13 | 4/17/13 | 4/17/13- 9/25/14 | $426,227.31 |
| **TOTAL** | | | | | | | **$616,749.58** |

11. Thomas was married to a different woman when the first fire occurred in 2004 than he was when the other fires occurred in 2010 and 2013.

**LEGAL STANDARD**

An indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged…" Fed. R. Crim. P. 7(c). "On the defendant's motion, the court may strike surplusage from the indictment…" *Id.* at 7(d). However, a motion to strike surplusage is appropriate if the language in an indictment is "immaterial, irrelevant, or prejudicial." *United States v. Marshall,* 985 F.2d 901, 905 (7th Cir. 1993). The Court must decide whether to strike this evidence based on relevance and prejudice. *United States v. O'Connor,* 656 F.3d 630, 645 (7th Cir. 2011).

The purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment, or not essential to the charge, or unnecessary, or inflammatory." *United States v. Poore*, 594 F.2d 39, 41 (4th Cir. 1979). The Advisory Committee Notes to the rule explain that "[t]his rule introduces a means of protecting the defendant against immaterial or irrelevant allegations in an indictment or information, which may, however, be prejudicial." Rule 7(d) "is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper,* 503 F.2d 327, 329 (6th Cir. 1974).

Language is "unduly prejudicial if the language 'serves only to inflame the jury, confuse the issues, and blur the elements necessary for conviction[.]'" *United States v. Prejean,* 429 F. Supp. 2d 782, 796 (E.D. La. 2006) (finding that description of "street" uses of drugs was not inflammatory, confusing or prejudicial) (quoting *United States v. Bullock,* 451 F.2d 884, 888 (5th Cir. 1971)). A "court may strike surplusage from the indictment or information when it is both irrelevant (or immaterial) and prejudicial." *United States v. Hedgepeth*, 434 F.3d 609, 612 (3rd Cir. 2006). "Logic demands the conjunctive standard: information that is prejudicial, yet relevant

to the indictment, must be included for any future conviction to stand and information that is irrelevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion." *Id.* Therefore, "'if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).'" *United States v. Moss,* 9 F.3d 543, 550 (6th Cir. 1993) (quoting *United States v. Thomas,* 875 F.2d 558, 562, n.2 (6th Cir. 1989)).

Such a motion faces an exacting standard – "a motion to strike surplusage should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial…and only rarely has surplusage been ordered stricken." *United States v. Fischbach and Moore, Inc.*, 576 F. Supp. 1384, 1398 (W.D.Pa.1983) (quoting C. Wright, Federal Practice and Procedure: Criminal 2d § 127, at 426-27 (1982)); *United States v. DePalma,* 461 F. Supp. 778, 797 (S.D.N.Y.1978). Moreover, the decision whether to strike language from an indictment rests within the sound discretion of the trial court. *United States v. Emuegbunam,* 268 F.3d 394, 395 (6th Cir. 2001).

**DISCUSSION**

Mr. Thomas seeks to strike nine paragraphs of the Indictment as surplusage. The basic theory of the prosecution is that Mr. Thomas engaged in a plan to defraud the insurance company through arson of insured properties and that he received the proceeds of his fraud through the U.S. Mail. A mail fraud charge under 18 U.S.C. § 1341 has the following relevant elements: (1) the defendant's participation in a scheme to defraud; (2) the defendant's intent to defraud; and (3) the defendant's use of the mails in furtherance of the fraudulent scheme. See, *United States v. Henningsen,* 387 F. 3d 585, 589 (7th Cir. 2004) (citing *United States v. Hickok,* 77 F. 3d 992.

5

1002-03 (7th Cir 1996). "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission, is punishable as a principal[; and] [w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." 18 U.S.C. § 2 (a) & (b).

An indictment charging mail fraud may include allegations relating to the entirety of the scheme or artifice, even if those additional allegations include acts that involve mailings prior to the conduct charged in the indictment. See, e.g., *United States v. Lanas,* 324 F. 3d 894, 901 (7th Cir. 2003) ("a mailing in furtherance of a scheme to defraud is simply the element that confers federal jurisdiction under the mail fraud statute; but a fraud scheme can produce proceeds long before the act that ultimately triggers [federal] jurisdiction"). The government is not limited to prove the scheme or artifice based on the timing of the charged mailings; rather, the government may present evidence demonstrating the width and depth of the scheme or artifice. See, e.g. *United States v. Boone*, 628 F. 3d 927, 933-34 (7th Cir. 2010). "The government is entitled to establish the scheme and can rely on evidence that occurred before and after the mailing in order to do so." *Id*. At 935. Evidence regarding acts that are intrinsic to the charged scheme or artifice is admissible.

Conversely, evidence extrinsic to the events charged in the indictment would be inadmissible. *United States v. Lane,* 323 F. 3d 568, 579-80 (7th Cir. 2003). Likewise, the government could not introduce evidence that is unfairly prejudicial. *United States v. Swan,* 250 F. 3d 495, 501 (7th Cir. 2001).

Admittedly, at this preliminary stage of the proceeding, it may be difficult to determine what evidence is part of the scheme or artifice. To that point, the allegations contained in

Paragraph 6 of the indictment appear to be more attenuated from the charged mail fraud scheme. Assuming the government has sufficient evidence to tie this portion of the scheme or artifice to the Defendant, then this evidence may be properly admitted at trial. However, at this stage of the proceedings, this paragraph seems gratuitous and unduly prejudicial.

Likewise, Paragraph 11 seems to hang in mid-air without any probative value at this juncture in the proceedings. Again, this evidence may be admissible ultimately at trial. However, at this early stage of the proceedings, it appears irrelevant and potentially prejudicial.

While the majority of the paragraphs of which the Defendant complains are intrinsically related to the charged scheme or artifice, Paragraphs 6 and 11 are, at this stage of the proceedings, potentially immaterial and/or prejudicial. Accordingly, the Paragraphs of the Indictment should be stricken as surplusage at this time, while leaving the Government with opportunity to lay an evidentiary foundation for the admission of this evidence at trial or at a pretrial hearing.

## **MOTION FOR BILL OF PARTICULARS**

**BACKGROUND**

On May 23, 2018, the Defendant filed his motion for a bill of particulars [DE 22], in which he argues that the indictment is inadequate to inform of the precise charges and a bill of particulars is necessary to specify the checks or transactions that form the basis of the indictment. Specifically, the Defendant believes that the Indictment is confusing because it includes allegations of uncharged conduct and the receipt of various insurance proceeds. To summarize the Defendant's argument, he seeks to avoid confusion, prevent possible conviction for an uncharged act, and avoid the possibility of being subjected to double jeopardy.

**LEGAL STANDARD**

The Sixth Amendment to the U.S. Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right…to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. An indictment is sufficient if it: (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend; and (2) contains sufficient facts to allow a defendant to raise a double jeopardy bar to subsequent prosecutions arising from the same actions. *United States v. Lazarenko,* 564 F.3d 1026, 1033 (9th Cir. 2009); see also, *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003. To ensure that an indictment meets these standards, Federal Rule of Criminal Procedure 7(f) provides that the "court may direct the government to file a bill of particulars." The decision to require a bill of particulars lies within the sound discretion of the trial court. *Fassnacht*, 332 at 446; *United States v. Canino,* 949 F.2d 928, 949 (7th Cir. 1991).

In analyzing whether to order the government to file a bill of particulars, "the key question is whether the defendant was sufficiently apprised of the charges against him in order to enable adequate trial preparation." *United States v. Blanchard*, 542 F.3d 1133, 1140 (7th Cir. 2008) (citing *United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003) ("[A] bill of particulars [is] unnecessary where the indictment sets forth the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense." (*alterations in original*))). The indictment need not describe the government's evidence, plead evidentiary detail, or identify all of the facts supporting the allegations. *Wong Tai v. United States*, 273 U.S. 77, 82 (1927); *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981). "Information relevant to the preparation of a defense includes the elements of each charged offense, the time and place of the accused's allegedly criminal conduct, and a citation to the

statute or statutes violated." *Blanchard*, 542 F.3d at 1140 (citing *Fassnacht*, 332 F.3d at 446). However, the defendant does not have the right to know the details of how the Government plans to prove its case. *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991); *Kendall*, 665 F.2d at 135. So long as the defendant could, from a reading of the indictment, "reasonably anticipate the evidence to be introduced at trial, the denial of the motion [for a bill a particulars] does not prejudice the defendant. *United States v. Andrus*, 775 F.2d 825, 843 (7th Cir. 1985).

In making the determination whether or not a bill of particulars is necessary, the court is not limited to considering only the indictment; information may be provided to the defendant by "some other satisfactory form." *Canino,* 949 F.2d at 949. In *United States v. McAnderson*, the Seventh Circuit noted:

> [w]here the indictment provides sufficient information to inform the defendant of the nature of the charges against him, and the government provides the defendant with information about the alleged overt acts and co-conspirators prior to trial, the defendant has not suffered prejudice from the refusal of the request for a bill of particulars,

*United States v. McAnderson*, 914 F.2d 934, 946 (7th Cir. 1990).

Absent an abuse of discretion, the trial court's decision will not be disturbed on appeal. *Wong Tai,* 273 U.S. at 82. The trial court abuses its discretion in denying a bill of particulars where "deprivation of the information sought leads to the defendant's inability to adequately prepare his case, to avoid surprise at trial, or avoid the later risk of double jeopardy." *United States v. Roya*, 574 F.2d 386, 389 (7th Cir. 1978) (quoting *United States v. Addonizio*, 451 U.S. 49, 64 (3rd Cir. 1971)).

**DISCUSSION**

The Defendant claims that the Indictment does not contain detailed or specific information regarding the dates of the occurrences that are the actual basis of the indictment for

mail fraud and which checks are the actual basis for the indictment for mail fraud. The Court cannot agree. Paragraph 12 contains a chart that specifically outlines the number of each count, and specifies: (1) the date of the check, (2) the source of the check, (3) the recipient of the check, and (4) the amount of the check for each charged count. It is important to note that mail fraud can be charged because a defendant sent something in the mail or received something in the mail. The indictment against Mr. Thomas falls into the latter category – the indictment claims that Mr. Thomas received checks through the mail, which brought to fruition his scheme or artifice to defraud and to obtain money or property by means of false or fraudulent pretenses, representations, or promises. As such, the indictment as plead here advises the Defendant of the elements of the charged offenses and provides sufficient notice of the charges to enable the defendant to prepare his defense.

Normally, even if an indictment is lacking in sufficient detail, a bill of particulars is not necessary "if the information the defendant seeks is readily available through alternate means such as discovery." *United States v. Vaughn*, 722 F.3d 918, 927 (7th Cir. 2013) (citing *Blanchard*, 542 F.3d at 1140). In fact, full discovery may obviate the need for a bill of particulars. *United States v. Griese*, 597 F.2d 1170, 1180 (7th Cir. 1979). Here, the Government represents that it produced "records of payments to Thomas and his associates." The Defendant has not demonstrated why the Government's pretrial disclosures coupled with the information contained in the indictment is insufficient to provide the Defendant with the information that he now seeks through a bill of particulars. Accordingly, no bill of particulars is necessary at this stage of the proceedings.

## CONCLUSION

For the reasons stated above, the Defendant's Motion to Strike Surplusage [DE 20] is **GRANTED, in part, and DENIED, in part**, as follows: Paragraphs 6 and 11 of the Indictment shall be **STRICKEN**; in all other regards the Motion is **DENIED**. The Clerk is directed to redact paragraphs 6 and 11 from the original indictment, and to refile the redacted indictment effective nunc pro tunc to the date of the filing of the original indictment [DE 1], to wit: April 11, 2018. The Government is not barred from seeking to admit the stricken information at trial or another hearing, assuming the Government lays a proper evidentiary foundation prior to moving to admit this information into evidence. Additionally, for the reasons stated above, the Defendant's Motion for a Bill of Particulars [DE 22] is **DENIED**.

SO ORDERED.

ENTERED: June 29, 2018.

                                             s/ Michael G. Gotsch, Sr.
                                             Magistrate Judge
                                             United States District Court